IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KARIE BRYAN,

     PLAINTIFF,

v.                                  CASE NO.:

ANTHEM INC.,

     DEFENDANT.
_____/

## COMPLAINT

Plaintiff, KARIE BRYAN (hereinafter referred to as "Plaintiff" or "Bryan"), by and through her undersigned attorney, sues Anthem Inc, (hereinafter referred to as "Defendant" or "Anthem"), and alleges as follows:

### *JURISDICTION AND VENUE*

1. This is an action to remedy discrimination on the basis of disability, retaliation and interference in and with the terms, conditions, and privileges of Plaintiff's employment in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111-12117, 12203, and Family Medical Leave Act, 29 U.S.C.S. §§ 2601; 2611-2654.

2. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 12111-12117, 12203.

3. Defendant is considered an employer within the terms and conditions

of the 29 USC §§ 2611 et seq. ("FMLA"), as Defendant was both engaged in commerce or in an industry or activity affecting commerce and employed more than 50 employees for each working day during each of 20 or more calendar weeks in each calendar year relevant hereto within a seventy-five (75) mile radius of Plaintiff's Molino, Florida worksite.

4. Plaintiff worked for Defendant from March 1, 2010, until August 3, 2020. Plaintiff is considered an "eligible employee" for purposes of the FMLA as she has been employed: (1) for at least 12 months by Defendant, and (2) for at least 1,250 hours of service with Defendant in the previous 12-month period.

5. The FMLA does not contain an exhaustion requirement and Plaintiff is not required to exhaust administrative remedies before bringing suit.

6. This action lies in the Northern District of Florida, Pensacola Division, because the unlawful employment practices were committed in this judicial district.

7. All conditions precedent and administrative remedies have been exhausted and jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and Fla. Stat. § 760.11. Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR" No.: 202128978) and the United States Equal Employment Opportunity Commission ("EEOC" No.: 15D202100431) on April 2, 2021. On September 20, 2021, Plaintiff received a determination notice from the

FCHR notifying of their conclusion of its investigation pursuant to Fla. Stat. § 760.11(3). Plaintiff thereafter requested her ninety (90) day Notice of Right to Sue letter from the EEOC which was received on May 5, 2022.

## *PARTIES*

8. Plaintiff is a Caucasian female and a citizen of the State of Florida and resides in Escambia County, Florida.

9. Defendant, Anthem Inc. is a for profit business that does business in the State of Florida and Santa Rosa County.

## *FACTS*

10. Plaintiff is a 55 year old Caucasian female.

11. Defendant employed Plaintiff from March 1, 2010 until August 4, 2020.

12. Plaintiff held the position of Provider Configuration Analyst Sr., reporting to Manager, Janine Ryan.

13. As a Configuration Analyst Sr., Plaintiff was part of Anthem's Configuration Root Cause Team ("CRCT").

14. The CRCT is responsible for root cause investigation and analysis on claims inquiries and provider appeals that are believed to stem from the core configuration of the claims processing system.

15. The department is set up in three tiers, with each tier supporting

progressively more complex research demands (Tier 1 being the lowest level, and Tier 3 the highest).

16. In her role, Plaintiff was responsible for Tier 1 level work, supporting research and analysis into inquiries from the Medicaid-GBD line of business.

17. Plaintiff was responsible for conducting in-depth research into claims inquiries to determine root cause related to pricing and benefit configuration questions, working with internal partners to confirm/validate historical configuration design and implementation, working with internal departments on workflow development and business process improvements, and utilizing advanced critical thinking and analytical skills to identify trends in configuration issues across markets and lines of business.

18. Plaintiff performed the duties of this position in a satisfactory manner.

19. Plaintiff was diagnosed with rapid cycling, insomnia, PTSD, Anxiety, and Depression, difficulty with focus, concentration and memory, further stating that my main issues remain (PTSD, depression, and anxiety).

20. After having informed Janine Ryan, Plaintiff's CRCT Manager, of her PTSD, depression, and anxiety diagnoses about her need for an accommodation and her goal to improve both mentally and in performance, Ms. Ryan informed Plaintiff, that her disability did not supersede or pertain to her ability to perform her job duties.

21. It took Plaintiff a while to make the decision to contact HR, which she had never done in her career with Defendant but did so based on advice from peers who were aware of the conditions on the team as well as the manner in which she was being treated because of her disability.

22. Plaintiff complained to Justine Kenner (Human Resources), that she was being intimidated, retaliated against, and working in a hostile environment because of her disability.

23. Plaintiff also made her manager and HR aware that she was literally afraid of Janine Ryan because of the way she treated her.

24. Plaintiff later applied and was approved for FMLA leave and was given a return date of April 1st, 2020.

25. Plaintiff was notified that if she did not return on that date, or if she had any delays in her return, she would be terminated from her position.

26. Under threat of termination, Plaintiff returned to work on April 1, 2020, with light duty restrictions for 90 days to allow her to gradually get back up to speed.

27. After about forty-five (45) days without any incidents, Plaintiff was forced to sign a document stating that she was being taken off light duty and able to return to normal duty and that she was being placed on 100% quality audit.

28. After Plaintiff was forced to sign the documents, Plaintiff noticed that

she was being targeted and held to different standard.

29. Plaintiff was subjected to 100 % examination of her matrix, when other non-disabled co-workers were subjected to significantly less than 100% matrix audits.

30. Due to her disability Plaintiff struggled to perform the 100% quality audit which no other employee was required to maintain.

31. On August 3, 2020, approximately two (2) months after Plaintiff was placed on 100% examination audit, Plaintiff was notified that she was being terminated.

## FIRST CAUSE OF ACTION
### *Disability Discrimination*
### *Americans with Disabilities Act, (ADA)*

32. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 7 through 31 of this complaint with the same force and effect as if set forth herein.

33. The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

34. At all times material hereto, Plaintiff was an employee of Defendant

and Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), as the Defendant employed more than 15 employees.

35. As such, Defendant is prohibited from discriminating against any qualified individual with a disability.

36. Plaintiff is, and was at all times pertinent hereto, a qualified individual with a disability.

37. Plaintiff suffers from rapid cycling, insomnia, PTSD, Anxiety, and Depression.

38. Plaintiff's rapid cycling, insomnia, PTSD, Anxiety, and Depression are impairments and disabilities within the meaning of the ADA as they substantially limits Plaintiff's ability to perform major life activities as compared to most people in the general population.

39. Plaintiff's rapid cycling, insomnia, PTSD, Anxiety, and Depression substantially limited her ability to perform the major life function of mental processing, concentration and other cognitive functions, difficulty with focus, concentration and memory, further stating that her main issues remain (PTSD, depression, and anxiety).

40. Upon learning of Plaintiff's disability and requested accommodations, Defendant failed engage in a good faith interactive process with Plaintiff to determine the reasonableness of her requested accommodation.

41. Upon learning of Plaintiff's disabilities and requested accommodations, Defendant was under an obligation to engage in a good faith interactive process with Plaintiff.

42. Defendant did not engage in a good faith dialogue with Plaintiff in an attempt to "identify the precise limitations" caused by Plaintiff's disability nor did Defendant "explore potential accommodations" to overcome those limitations.

43. Defendant's termination and disqualification of Plaintiff's employment on August 3, 2020, on the basis of her disabilities and Defendant's failure to make a good faith individual assessment to determine whether Plaintiff could be employed or whether a reasonable accommodation would enable her to be employed by Defendant, violated the ADA.

44. Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to her termination is entirely *pretextual* for Defendant's retaliation and discrimination against her for engaging in a protective activity and for any actual or perceived disability.

45. The adverse personnel action, the termination of Plaintiff's employment, clearly violated her statutory protected rights and constituted a prohibited employment practice, contrary to the public policy of the under the Americans with Disabilities Act, (ADA).

46. As a result of the Defendant's violations of the ADA, Plaintiff has

been substantially damaged, in that she has lost wages, associated job benefits; and in addition, she has sustained compensatory damages, based upon mental, psychological and emotional distress, and anxiety from difficult economic circumstances, resulting from his unlawful discharge.

### SECOND CAUSE OF ACTION
#### DISABILITY RETALIATION
#### AMERICANS WITH DISABILITIES ACT, (ADA)

47. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 7 through 31 of this complaint with the same force and effect as if set forth herein.

48. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from retaliating against qualified individuals for objecting to discriminatory acts or for requesting an accommodation.

49. Defendant terminated and disqualified Plaintiff from her employment in retaliation for questioning and objecting to Defendant's failure to discuss her accommodation requests and for requesting an accommodation.

50. Defendant acknowledged and regarded Plaintiff as disabled (perceived or otherwise) and as having an impairment.

51. When Plaintiff provided Defendant with sufficient information regarding her Plaintiff suffers from rapid cycling, insomnia, PTSD, Anxiety, and Depression and requested a reasonable good faith accommodation, Plaintiff's

requests became and were considered a statutorily protected activity under the ADA.

52. Plaintiff questioned and objected to Defendant's failure to discuss her accommodation requests and further complained to Defendant that she was being targeted and held to a different standard with her audit percentage, but Defendant maintained Plaintiff's 100% audit requirement.

53. Defendant's August 3, 2020, termination and disqualification of Plaintiff's employment was in retaliation for her seeking a good faith accommodation, her objecting to Defendant's discriminatory practices regarding her disability and requested accommodation, constituted a statutory protected activity and a prohibited employment practice, contrary to the public policy of and in violation of the ADA.

54. Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to her termination is entirely *pretextual* for Defendant's retaliation against her for engaging in the statutory protective activity of requesting a reasonable accommodation.

### THIRD CAUSE OF ACTION
(FMLA RETALIATION)

55. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 3 through 5 and 8 through 31 of this complaint with the same force and effect as if set forth herein.

56. It shall be unlawful for any employer to retaliate against an employee for exercising or attempting to exercise, any right provided under the Family Medical Leave Act, ("FMLA") 29 U.S.C.S. §§ 2601; 2611-2654.

57. The Family Medical Leave Act, 29 U.S.C.S. §§ 2601; 2611-2654, prohibits employers from retaliating against individuals for exercising their rights under the FMLA.

58. Plaintiff was an employee entitled to a benefit under the FMLA and Defendant retaliated against her for exercising her rights under the FMLA.

59. Defendant's August 3, 2020, termination and disqualification of Plaintiff's employment was in retaliation for her seeking reinstatement and/or other employment with Defendant after her FMLA leave ended, which constituted a statutory protected activity and a prohibited employment practice, contrary to the public policy of and in violation of the FMLA.

60. Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to her termination is entirely *pretextual* for Defendant's retaliation against her for engaging in the statutory protective activity of requesting a reasonable accommodation.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment:

a) Declaring the acts and practices complained of herein are violation of the FMLA and ADA;

b) Enjoining and permanently restraining those violations of the FMLA and ADA;

c) Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiff's employment opportunities;

d) Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to the ADA and/or FMLA;

e) Directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory treatment of her and make her whole for all earnings she would have received but for Defendant's discriminatory treatment, statutory damages for lost wages, benefits, and other compensation, plus interest thereon at the statutory rate, pursuant to the FMLA and ADA;

f) Awarding compensatory damages in the amount of the above-requested award, pursuant to the ADA;

g) Plaintiff further seeks declaratory, injunctive, and equitable relief pursuant to the ADA and FMLA;

h) Awarding liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C.A. § 2617(a)(1)(A)(iii);

i) Awarding Plaintiff attorney's fees, expert witness fees, and costs of this action, pursuant to the ADA, FMLA and Fed. R. Civ. P. 54 and such other relief as this Court may deem just and proper;

j) Granting such other and further relief, equitable or otherwise, as the Court deems just and proper in the premises.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: August 1, 2022.　　　　By: */s/ Clayton M. Connors*
　　　　　　　　　　　　　　　　CLAYTON M. CONNORS
　　　　　　　　　　　　　　　　Florida Bar No.: 0095553
　　　　　　　　　　　　　　　　Email: cmc@westconlaw.com
　　　　　　　　　　　　　　　　**THE LAW OFFICES OF**
　　　　　　　　　　　　　　　　**CLAYTON M. CONNORS, PLLC.**
　　　　　　　　　　　　　　　　4400 Bayou Blvd., Suite 32A
　　　　　　　　　　　　　　　　Pensacola, Florida 32503
　　　　　　　　　　　　　　　　Tel: (850) 473-0401
　　　　　　　　　　　　　　　　Fax: (850) 473-1388
　　　　　　　　　　　　　　　　*Attorney for Plaintiff*